UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHELSEA A. HARRIS,

       Plaintiff,

                                                                            Civil Action No. 20-cv-00373

UNITEDHEALTHCARE OF WISCONSIN, INC.,
a domestic insurance company,

       Involuntary Plaintiff,

v.

WELLPATH, LLC (F/K/A CORRECT CARE SOLUTIONS, LLC),
LEEANN JUNTUNEN-SULLIVAN,
DIANE JENSEN, and ANDREW RUPNOW,

       Defendants.

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE
TO FILE AN AMENDED COMPLAINT**

The Plaintiff, Chelsea A. Harris, by her attorneys, First, Albrecht & Blondis, S.C. hereby submits this reply memorandum of law in support of her motion for leave to amend the Complaint pursuant to Rules 16(b)(4) and15(a)(2) of the Federal Rules of Civil Procedure and Civil L. R. 7(c).

### I. ARGUMENT

#### A. The Plaintiff Did Not Know the Identity of the On-Call Provider nor Know Pertinent Facts Relating to the February 11, 2018 Interaction.

The plaintiff did not know the identity of the on-call physician until after several various discovery attempts. To begin, the relevant notation made by Nurse Denissen on the night of February 11, 2018 reads: "MD was notified at 2250, ordered Tylenol 650mg to be given & medical

1

observation." (ECF No. 48-1, Nathan Thompson Deposition Ex. 23, p. 16.) Neither a Medication Administration Record (MAR) nor a formal telephone order were created. (Bradley 7/14/2021 Decl. ¶ 5, Ex. 3, Sue Ward Dep. 199:1-201:14.)

Plaintiff's counsel asked to depose the unidentified on-call physician as early as September 8, 2020, (ECF no. 48-7, p. 1), and was told on September 21, 2020 that "it [was] not known if [Dr. Fatoki] was the 'MD' notified by J. Denissen; we are still investigating." (Bradley 7/14/2021 Decl. ¶ 6, Ex. 4.) When an interrogatory asked the defendant to "[i]dentify the physician with whom Nurse Jessica R. Denissen communicated on the night of February 11, 2018 relating to Ms. Harris," Wellpath did not identify the doctor. Rather, it stated: "Wellpath does not have a recording or other record to identify the 'MD' in question." (ECF 48-8, Resp. to Inter. 8.) When asked at deposition for the identity of the on-call physician, Nurse Denissen did not remember and said that Wellpath would have the information. (ECF No. 48-3 Jessica Denissen Deposition, 45:2-9.) In Dr. Fatoki's deposition, he testified that he did not believe that he was the physician who was called, and that he was unable to check his phone records. (Bradley 7/14/2021 Decl. ¶ 4, Ex. 2, Fatoki Dep. 37:9-38:1; ECF No. 48-2 Fatoki Dep. 59:15-22.) So, although the plaintiff was aware that Dr. Fatoki was the Regional Director and had on-call duties at the time of the initial disclosures, it is a far stretch to argue that the plaintiff knew or should have known that he was the unidentified "MD" referenced on the February 11, 2018 notation.

Furthermore, even if the plaintiff was expected to know the identity of the unidentified "MD" when Wellpath, Nurse Denissen, and Dr. Fatoki did not, the plaintiff did not have access to other information that forms the basis of the constitutional claims. For example, the plaintiff did not know until Nurse Denissen's deposition that she did not review prior notations from other nurses because they are not "medical records." (Bradley 7/14/2021 Decl. ¶ 3, Ex. 1, Denissen Dep.

2

40:5-19.) The plaintiff did not know that the phone call lasted no more than 47 seconds. The plaintiff did not know that there were no efforts to contact other on-call providers or follow-up phone calls with Dr. Fatoki. The plaintiff did not know that the phone records show a practice of calls to Dr. Fatoki lasting less than 1 or 2 minutes as a matter of course after 10 pm. The plaintiff did not know of the Wellpath policy instructing nurses to contact another on-call provider if they are unable to get ahold of the on-call physician within 15 minutes. (Bradley 7/14/2021 Decl. ¶¶ 7-8, Ex. 5-6.) All of this information was gathered during depositions and as a result of several rounds of written discovery and third-party subpoenas.

## B. The Addition of Doctor Fatoki and Nurse Denissen is Not Futile

### i. Constitutional claims are neither time barred nor meritless.

The statute of limitations for 42 U.S.C. §1983 at the time of this incident was six years. *See Hemberger v. Bitzer*, 216 Wis. 2d 509, 574 N.W.3d 656, 660 (1998). This Amended Complaint specifically alleges violations of the Eighth and Fourteenth Amendments against the individual defendants, which would include Dr. Fatoki and Nurse Denissen. Because these events occurred in February 2018, the statute of limitations does not run until February 2024.

The plaintiff states a claim under either the deliberate indifference standard of the Eighth Amendment, *see Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010), or the objective unreasonableness standard of the Fourteenth Amendment, *see Miranda v. Cnty of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). The proposed Amended Complaint alleges that Defendant Denissen recognized that Ms. Harris' condition required prompt medical attention. (Doc. 57-1 ¶ 50.) This recognition establishes an awareness that Ms. Harris was suffering a serious medical condition. *See Scott v. Benson*, 742 F. 3d 335, 340 (7th Cir. 2014) ("A serious medical condition is one diagnosed by a physician or easily recognized by a lay person as requiring medical attention.);

3

*Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (finding a serious medical condition with the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment or the existence of chronic and substantial pain). Furthermore, considering that plaintiff's experts have challenged the adequacy of a phone call lasting, in its entirety, no more than 47 seconds pertaining to a 26-week, high-risk, pregnant woman who was complaining of severe abdominal/pelvic pain, a reasonable inference can be drawn that Nurse Denissen simply left a voicemail for Dr. Fatoki and did not follow-up with him or any other provider. This is supported by the fact that the name of the doctor was omitted from the notation and there was no formal physician order in the chart. It is also supported by the fact that Dr. Fatoki testified he would not have ordered Tylenol and medical observation for a high risk 26-week pregnant woman who had been complaining of severe abdominal pain for days. (ECF No. 48-2, Fatoki Dep. 59:23-61:12.) A nurse who recognizes the urgency of a medical situation[1] but who merely gives Tylenol when unable to connect with an on-call provider—in violation of policy instructing her to contact another on-call provider after 15 minutes—should be found culpable of both deliberate indifference and objective unreasonableness.

Similarly, considering that Dr. Fatoki was the primary on-call provider at the Brown County Jail (and two other jails) yet phone records show a pattern of short calls with no follow-up after 10 pm, a jury could conclude that such conduct would be reckless and deliberately indifferent to the medical needs of inmates at the Brown County Jail, including Ms. Harris. Conversely, if Dr. Fatoki actually was contacted by Nurse Denissen, who informed him of the pelvic pain and 26-week high risk pregnancy, he testified that he would have recognized she needed to be seen at

---

[1] Nurse Denissen admitted that she recognized the urgency of Ms. Harris's medical presentation, which is why she called the unidentified on-call doctor. (Bradley 7/14/2021 Decl. ¶ 3, Ex. 1, Denissen Dep. 49:11-22.)

the emergency room. (ECF No. 48-2, Fatoki Dep. 59:23-61:12.) Ordering Tylenol and undefined "medical observation" for someone known to be in need of urgent care at an emergency room certainly would constitute deliberate indifference and objective unreasonableness.

### ii. The negligence of Dr. Fatoki and Nurse Denissen is imputed to Wellpath.

As stated in the proposed Amended Complaint, Wellpath is liable for the injuries sustained as a result of the negligent acts of its employees and agents. (Doc 57-1 ¶¶ 89, 91.) The plaintiff is not seeking personal liability against Dr. Fatoki and Nurse Denissen under negligence theories. Rather, the plaintiff is seeking to recover against Wellpath—their employer—for their negligence. This is pursuant to *respondeat superior. See James Cape & Sons Co. v. Streu Constr. Co.*, 2009 WI App 144, ¶10, 321 Wis. 2d 522, 530, 775 N.W.2d 277, 280.

The plaintiff brought a claim against Wellpath prior to the three-year statute of limitations. In the original complaint, the plaintiff alleged a lack of medical care in punitive segregation," referenced that on February 11 she was crying and complaining of 9/10 pain in the lower pelvic region with vaginal discharge, (Doc. 1 ¶ 56), was not checked or assessed from three days after being placed on medical observation, (Doc. 1 ¶ 57), and that no medical professional came to assess her from the night of February 11 through the 14th, (Doc. 1 ¶ 59). The complaint also alleged that Wellpath, through its employees, was negligent in the assessment, medical management, treatment, and rendering of medical care to Ms. Harris. (Doc. 1 ¶ 81.)

Fed. R. Civ. P. Rule 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The new facts being added to establish the 42 U.S.C. § 1983 claims against Dr. Fatoki and Nurse Denissen essentially add only unnecessary detail for the negligence claims against Wellpath, which were sufficiently pleaded in March

5

2020—prior to the three year statute of limitations—consistent with notice pleading. *See Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 848 (7th Cir. 2017) (stating that a complaint need not include a full description of the facts and that the Supreme Court and the Seventh Circuit have rejected the contention that Rule 8 as understood in *Twombly* requires fact pleading).

Furthermore, even if the Court were to construe the new facts to constitute a new claim negligence claim against Wellpath, the new claim would relate back to the date of the original filing because the amendment would assert a claim "that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

### C. The Defense is Not Prejudiced by the Amendment

Plaintiff's experts produced their reports consistent with the Amended Scheduling Order in early April 2021. The basis of the plaintiff's grievances against Dr. Fatoki and Nurse Denissen are clearly contained in the reports. Wellpath has questioned the experts on these topics during their depositions. (*See e.g.* ECF No. 58-4 Ward Dep. 139-153; ECF No. 58-6 Cruz Dep. 78-85 ECF No. 58-8 Anicette Dep. 120-129.) Furthermore, Wellpath identified three expert witnesses on July 12, 2021, and each had an opportunity to respond to plaintiff's expert reports:

Kennon C. Tubbs, MD, NCCHC-P

- Dr. Tubbs was provided with the expert reports of plaintiff experts Sue Ward and Lionel Anicette and the deposition transcript of Dr. Anicette. (Bradley 7/14/2021 Decl. ¶ 9, Ex. 7, Tubbs report at 2-3.)
- Dr. Tubbs addresses the 47-second call presumably between Dr. Fatoki and Nurse Denissen. (Bradley 7/14/2021 Decl. ¶ 9, Ex. 7, Tubbs report at 9.)
- Dr. Tubbs repeatedly opines that Nurse Denissen and Dr. Fatoki provided appropriate care. (Bradley 7/14/2021 Decl. ¶ 9, Ex. 7, Tubbs report at 10-12.)
- Dr. Tubbs concludes there was no deliberate indifference or medical negligence by any Wellpath staff member. (Bradley 7/14/2021 Decl. ¶ 9, Ex. 7, Tubbs report at 13.)

Anthony Sciscione, DO

- "I disagree with the Plaintiff's experts that the standard of care was violated during Ms. Harris's detention." (Bradley 7/14/2021 Decl. ¶ 10, Ex. 8, Sciscione report, July 7, 2021, at 5 ¶1.)
- It is my opinion that there was no time when any of the nurses or doctors at the Brown County Jail deviated from the standard of care of negatively contributed to the outcome in this case." (Bradley 7/14/2021 Decl. ¶ 10, Ex. 8, Sciscione report, July 7, 2021, at 7.)

Tia Medley, DNP, CNS, MS, RN, FNP-BC, APNP

- Nurse Practitioner Medley reviewed the plaintiff's expert disclosures and their deposition transcripts. (Bradley 7/14/2021 Decl. ¶ 11, Ex. 9, Medley report, July 8, 2021, at 2.)
- Nurse Practitioner Medley "provide[s] a rebuttal to the claims made by Nurse Suzanne Ward, an expert witness for the plaintiff." (Bradley 7/14/2021 Decl. ¶ 11, Ex. 9, Medley report, July 8, 2021, at 5.)
- Nurse Practitioner Medley provided "expert analysis" pertaining to the 47-second phone call. (Bradley 7/14/2021 Decl. ¶ 11, Ex. 9, Medley report, July 8, 2021, at 14.)

## II. CONCLUSION

For the reasons stated above, the Motion for Leave to File an Amended Complaint should be granted.

Dated at Milwaukee, Wisconsin, this 14th day of July, 2021.

> FIRST, ALBRECHT & BLONDIS, S.C.
> Attorneys for Plaintiff
>
> /s/James P. End
> James P. End
> State Bar #1032307
> jend@fabattorneys.com
>
> s/Alexa C. Bradley
> Alexa C. Bradley
> State Bar No. 1102009
> abradley@fabattorneys.com
>
> Broadway Theatre Center

158 North Broadway, Suite 600
Milwaukee, WI 53202
Telephone: (414) 271-1972
Facsimile: (414) 271-1511